# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **DEVIN HALL,** | **Case No. 1:23-cv-01710-PAB** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **CUYAHOGA COUNTY, *et al.*,** | |
| **Defendants.** | **MEMORANDUM OPINION AND ORDER** |

This matter comes before the Court upon Defendants Former Sheriff Joseph S. Greiner ("Sheriff Greiner") and Associate Warden Michelle Henry's ("Warden Henry")[1] Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") (together, "Defendants"), filed on March 22, 2024. (Doc. No. 11.)  Plaintiff Devin Hall ("Hall") did not respond to Defendants' Motion.  Accordingly, Defendants' Motion is ripe for a decision.

For the following reasons, the Court **GRANTS** Defendants' Motion.  (Doc. No. 11.)

## I.     Background

### A.     Factual Background

Hall's Complaint sets forth the following allegations.  First, Hall discusses two primary events.  Hall is jailed at the Cuyahoga County Jail (the "Jail").  (Doc. No. 1 at PageID# 2.)  At around 6:00 or 6:30 P.M. on May 18, 2022, in Pod 8D, Hall was physically assaulted by three "gang members."  (*Id.* at PageID# 3, 9–10.)  According to Hall, these gang members pay "certain

---

[1] In his Complaint, Hall spells Warden Henry's name as "Henrey." (Doc. No. 1 at PageID# 3.) In their Motion to Dismiss, Defendants spell Warden Henry's name as "Henry." (Doc. No. 11.) The Court will use Defendants' spelling.

correctional officers for information about [other] inmates['] criminal case[s]." (*Id.* at PageID# 10.) The correctional officer who was working on May 18, 2022, did nothing to prevent or stop the attack, and waited 10 to 20 minutes to call for backup on the radio. (*Id.*)  As a result of the assault, Hall asserts he was "nearly killed" and suffered a concussion, as well as three stitches in three different spots in his head and face and a chipped tooth. (*Id.*)

Hall now suffers from headaches, PTSD, paranoia, anxiety, depression, and emotional trauma. (*Id.* at PageID# 4.)  Further, the Jail gave him "lockup days" for the assault. (*Id.* at PageID# 16.)  Hall alleges that "Cuyahoga County knew the nature of [his] criminal case" but "did not take the proper necessary steps to protect [his] physical safety" until after the assault. (*Id.* at PageID# 4.)

On July 7, 2023, at 3:00 P.M., Inmate Myers died due to a drug overdose. (*Id.* at PageID# 24.)  According to Hall, Myers had overdosed once before but the Jail did not take the "right steps" to make sure that he did not overdose again, such as properly searching him. (*Id.* at PageID# 4, 5, 24.)  Hall was "traumatized and emotionally scarred from having to endure" Myers' death. (*Id.* at PageID# 4.)

Hall's Complaint also sets forth myriad allegations concerning the Jail's general environment. Specifically, correctional officers and the corporals do not properly check on inmates; inmates have seizures and do not get proper medical care; inmates do not get medical attention when they have medical problems; inmates die from drug overdoses and/or excessive drug use; inmates do not get their lawyer video visits and/or lawyer phone calls or video visits from their loved ones on certain days; inmates experience excessive solitary confinement; inmates lack the opportunity to get physical exercise; inmates do not take showers; and inmates do not get adequate personal hygiene such as razors, all of which demonstrate that the Jail is inadequately staffed. (Doc. No. 1 at PageID# 7–8.)

2

Hall further alleges that he does not get proper medical care and/or proper medical attention, watches other inmates having seizures and dying from drug overdoses and/or excessive drug use; is "excessively solitary confined"; lacks the opportunity to get physical exercise; does not take showers; does not get a haircut; and does not get a razor to shave.  (*Id.* at PageID# 8.)

According to Hall, the Jail "environment" is inadequate.  (Doc. No. 1 at PageID# 3–11.)[2] Correctional officers do not make proper rounds to check on inmates; female and male correctional officers have a sexual relationship with certain "gang member" inmates in exchange for drugs and information about other inmates' criminal cases and/or about these inmates' situations; inmates get stabbed; corporals do not communicate with or brief each other on "what is going on the Jail"; and Jail staff treat every inmate "like animals." (*Id.* at PageID# 8–9, 11.)  This inadequate Jail environment means the Jail is "ran differently on different rotations," which leaves inmates confused, uncertain, and uninformed, and also made Hall a victim of physical assault and made Hall endure Inmate Myers dying from a drug overdose.  (*Id.* at PageID# 9–10.)  The correctional officers have also provoked, disrespected, threatened, insulted, and slandered Hall.  (*Id.* at PageID# 10.)

Additionally, Hall alleges that the Jail's inhumane living conditions includes the Jail being "so overcrowded" that inmates have to sleep on the floor in the day area; inmates do not receive their mail for months at a time; inmates do not get their uniforms washed; inmates drink out of sinks with mold "where the water comes from"; inmates shower with mold because the Jail does not clean the showers; inmates do not get adequate personal hygiene such as soap, toothpaste, lotion, toothbrushes, and deodorant; indigent inmates pay for an indigent pack; inmates do not get haircuts; inmates do not

---

[2] Throughout his Complaint, Hall sets forth allegations concerning the Jail's "environment."  (Doc. No. 1 at PageID# 3–11.)

3

get proper cleaning supplies to clean their cells and/or the Pod; inmates share the same mophead that is used to mop 3 other Pods; inmates do not have adequate lighting in their cells and/or adequate sunlight; inmates do not get fresh air; inmates are housed in Pods where the Jail has not cut the water on in certain cells "so there is human feces and piss in the toilet" and the Jail has not flushed the toilet and "does not care to"; inmates live in Pods where the Jail has not fixed the broken toilet so inmates "have to smell human feces and piss on the Pod"; inmates do not get adequate heating in their cells, so the winters in the Jail are "very barbaric and brutal"; and inmates do not get toilet tissue because the correctional officers "tend to forget to pass it out." (*Id.* at PageID# 12.)  Hall himself does not receive proper cleaning supplies to clean his cell or have his state uniforms washed properly. (*Id.* at PageID# 13.)  Hall's drinking sink has mold "on the part where the water comes from"; the shower he uses has not been properly cleaned and/or sanitized; Hall, as an indigent, has to pay for an indigent pack; Hall has to share a mophead with three other Pods; Hall does not get adequate sunlight and/or fresh air in his cell; and Hall is housed in a Pod where the Jail has not fixed certain toilets "so he has to smell human feces and piss." (*Id.*)

According to Hall, the Jail's unsanitary food preparation has inmates eating "dirt cold food," including soggy bread and cookies; inmates receive food trays with hair in their food; inmates wait hours to eat and/or wait hours to receive their food trays; inmates get "very small portion size" food trays; inmates get their food trays with "their food all [thrown] together, so the cookies will be on the meat and the peas will be on top of the bread," or corn is in the pudding and bread is on top of the "corn mixed pudding"; food is served in a plastic bag; and food is not cooked and prepared in a kitchen. (*Id.* at PageID# 13–14.)  Hall "eats, endures, and adapts" to the food, which he alleges is "cruel and unusual punishment and involuntary servitude punishment." (*Id.* at PageID# 14.)

4

Hall further alleges that although the Jail's "handbook" provides that the Jail will provide inmates with underwear, a pair of socks, and t-shirts, Hall has never received a pair of underwear nor a t-shirt and had to buy his own socks from the commissary.  (*Id.* at PageID# 15.)  Hall also alleges that the mophead gets changed "like once a week if that," and that inmates "on redzone" cannot shower daily.  (*Id.*)  The Jail does not know who does notaries, and when Hall asked the social services worker, they told him that the Jail does not do notaries.  (*Id.*)  Inmates do not get access to outside air, the ability to jog in a large area, or exercise mats.  (*Id.*)  As to programming, "some inmates are not allowed to be in programs" and some of these inmates did nothing wrong to be classified the way they are."  (*Id.* at PageID# 16.)  As to social services, social services does not answer inmates' kites in a reasonable amount of time.  (*Id.*)  As to chronic care services, inmates with seizure, asthma, and any other illness that requires chronic medical care do not get it but instead are treated as any other inmate.  (*Id.*)  Inmates do not go into their cells at or by 10:00 P.M. and lockdown occurs instead at 9:00 P.M. or 9:30 P.M. each night.  (*Id.*)  As to violations and penalties, the Jail gives inmates lockup days "for what the correctional officers failed to do," including Hall when he got physically assaulted. (*Id.*)  As to the Jail's grievance procedure, the Jail takes a "long time" to answer an inmate's grievance and still does not even solve the grievance.  (*Id.*)  Additionally, the Jail "tries to cover everything up that the Jail does wrong."  (*Id.*)

According to Hall, the Jail's conditions constitute cruel and unusual punishment, inhumane living conditions, inadequate Jail environment, and involuntary servitude punishment.  (*Id.* at PageID# 7.)  Further, the Jail has inadequate staffing, unsanitary food preparation, nutritionally inadequate food, poor medical care, lack of opportunity for inmates to get physical exercise, and excessive solitary confinement.  (*Id.*)

Hall's Complaint also contains allegations detailing various other "inhumane" experiences in Pod 10-C:

- June 12, 2022: An inmate in cell 14 had a seizure and threw up on the floor because he did not get the proper medical care to prevent this from happening.
- June 29, 2022: An inmate in cell 6 clogged his toilet, causing his toilet to flood his cell, and toilet water came into Hall's cell, flooding it. The on-duty correctional officer "did not care to come [i]n the pod" and left Hall in a flooded cell for up to an hour.
- July 2, 2022: Hall had a video visit at 7:00 P.M., but the corporal denied Hall his video visit.
- July 8, 2022: A "white shirt" correctional officer told the inmates that "the medical cart is coming" and "y['] all go in your houses and get ready for your drugs." According to Hall, this is "slander and disrespect."
- July 17, 2022: A correctional officer woke Hall up at 8:00 A.M. and told him that he has a lawyer visit via Zoom, but at 10:00 A.M., the correctional officer told him that "the Jail is short of staff" and that Hall will not get his Zoom visit with his lawyer.
- July 27, 2022: From 5:00 – 5:30 P.M., the Jail's "SRT" "stripped an inmate of his books and hygiene" then put the inmate on lockup "for nothing." According to Hall, this was "unnecessary force."
- July 29, 2022: At 11:00 A.M., Hall had video court that was held in the hallway around inmates, nurses, and correctional officers that "made his connection bad" and Hall "couldn't hear anything." When Hall came back from court, the mail person gave him mail "about the court date [he] had just left from."
- July 30, 2022: Hall received mail on a Saturday, even though mail "does not run" on the weekends in the Jail.
- August 2, 2022: Inmates ate lunch at 2:17 P.M. after waiting 2 to 3 hours, and the bread and cookies were "extremely soggy" and "dirt cold."
- August 5, 2022: At around 5:30 – 5:45 P.M., Correctional Officer Williams[3] "disrespected," "threaten[ed]," "insulted," "slander[ed]," and "provoked" Hall. Hall wrote a grievance about this incident on August 5, 2022, at 7:18 P.M.
- August 7, 2022: Inmates ate lunch at 1:00 P.M.
- August 11, 2022: Inmates ate lunch at 2:45 P.M. This was also the first day in a month that inmates had their state uniforms washed. The shower had not been "washed out" in 4 to 5 months.
- August 12, 2022: Inmates ate lunch at 2:40 P.M. and the food was "dirt cold."
- August 13, 2022: Inmates ate lunch at 2:08 P.M. and it was "dirt cold."

---

[3] Hall does not identify Officer Williams by his first name, nor does he name Officer Williams as a Defendant in this case.

- August 15, 2022: Inmates ate breakfast at 7:00 A.M., although breakfast is supposed to come at 5:00 A.M.
- August 18 & 25, 2022: The inmates did not get their commissary sheets because the correctional officer did not pass them out.
- August 19, 2022: Inmates ate lunch at 2:20 P.M. and the food was "dirt cold."
- August 21, 2022: Inmates ate lunch at 2:00 P.M. after the correctional officer came back from his lunch break.
- August 23, 2022: At around 10:00 – 10:30 A.M., cell 11 flooded 7 cells and the correctional officer on the pod that day "just watched."
- August 25, 2022: The Jail placed Inmate Tarel, in cell 5, on "corporal cam," and he did not get to shower for at least 2 to 3 months.
- September 3, 2022: This was the third week that inmates did not receive their commissary. The inmates, including Hall, filled out a commissary sheet.
- September 16, 2022: Inmates ate breakfast at 7:00 A.M.  Also, a correctional officer "left cell 13's window with his feces" and did not feed the inmate lunch. The officer also "did not inform the corporal to handle the situation." According to Hall, this is not the Jail's policy.
- September 18, 2022: Inmates ate breakfast at 8:00 A.M.
- September 19, 2022: Hall had been in Pod 10-C for nine months, but the shower has only been cleaned twice.
- September 20, 2022: Inmates' state uniforms were washed.
- September 25, 2022: The lunch was cold and the correctional officer did not give the inmates another tray.
- September 26, 2022: The corporal told the correctional officer to not give cell 17 his 2:30 P.M. video visit, so he missed it.
- October 3, 2022: The correctional officer told Hall that he forgot that he had a video visit at 3:00 P.M., so Hall missed it.
- October 16, 2022: The correctional officer refused to let any other inmates out of their cells "for their time of out their cell" because cell 2 refused to close his chute. According to Hall, this is against Jail policy.
- October 18, 2022: Inmates' state uniforms were washed.
- November 4, 2022: Inmates ate dinner at around 7:30 P.M. to 8:00 P.M., and the food was cold.
- November 5, 2022: Hall received 3 letters on Saturday because the Jail is "so backed up on mail."
- November 6, 2022: Inmates had their state uniforms washed.
- December 30, 2022: Inmates ate dinner at 7:22 P.M. and the food was cold.
- January 2, 2023: Inmates ate breakfast at 7:00 A.M. Cell 20 had his window covered up for more than 4 hours and the correctional officer "did not follow the policy" to get the inmate to remove what covered his window on his door.
- January 4, 2023: Inmates ate lunch at 2:00 P.M.
- January 6, 2023: In cell 8, Inmate Terell missed his 3:30 P.M. video visit because the correctional officer did not let him out of his cell.

7

- January 19, 2023: Hall told the medical cart nurse that he had an ear infection and filled out two medical grievance forms. Hall was not seen by a nurse for more than two weeks.
- February 4, 2023: Hall was scheduled to go to the law library, but apparently did not because "the Jail is inadequate[e]ly staffed."
- April 3, 2023: At 5:20 P.M., the correctional officer wrote "in the book" that Hall got time out of his cell when he did not.
- April 5, 2023: At 5:30 to 5:45 P.M., around dinner time, Hall told the correctional officer that he had hair in his food, but the officer ignored him.
- April 10, 2023: Hall asked the correctional officer for his time out of his cell and the officer told him to "shut the f*** up."
- April 17, 2023: Inmate Myers died from a drug overdose.
- April 19, 2023: Inmates got their hair cut. This was the only time Hall got a hair cut in the year that he had been in Pod 10-C.

(*Id.* at PageID# 17–24.)  For most of these incidents, Hall wrote a grievance, which was either not answered or was on the grievance kiosk for so long that it timed out.  (*Id.* at PageID# 24.)  Hall attached two of these "Inmate Health Care Grievance Forms" to his Complaint, with one dated February 2, 2023, and the other dated April 3, 2023.  (Doc. No. 1 at PageID# 25–26.)

**B.  Procedural History**

On August 31, 2023, Hall filed the instant lawsuit against Defendants[4], seeking relief under 42 U.S.C. § 1983.  (Doc. Nos. 1, 1-1.)  In his Complaint, Hall brings four grounds for relief under Section 1983: (1) cruel and unusual punishment; (2) inhumane living conditions; (3) inadequate jail environment; and (4) "involuntary servitude punishment."  (*Id.* at PageID# 6.)  Hall further asserts that he was injured due to Defendants' "negligent recklessness," neglect of duty, negligent

---

[4] Hall also named Cuyahoga County as a Defendant.  (Doc. No. 1.)  However, after the Court granted Hall's Motion to Proceed In Forma Pauperis, and as Defendants acknowledge, Hall failed to provide a completed summons for Cuyahoga County.  (Doc. No. 3; Doc. No. 11 at PageID# 70 ("To date, [Hall] has not issued documents relating to Defendant Cuyahoga County.").)  Therefore, on June 7, 2024, the Court dismissed Defendant Cuyahoga County for Hall's failure to prosecute.  (Non-Document Order, June 7, 2024.)

8

indifference, "disregard of failure to protect inmates' physical safety," and "violation of dereliction of duty." (*Id.*)

In his Complaint, Hall does not expressly indicate whether he is suing Defendants in their official capacities or their individual capacities. Hall states that Sheriff Greiner "is involved because the way that the Jail is operated . . . falls upon the sheriff." (*Id.* at PageID# 3.) Hall further states that Warden Henry "is involved because . . . the warden is the one who signs off on [whether] I am moved to a pod where I am protected from threats to my physical[] safety," and also because "the Jail could [have] prevented" the overdose on July 17, 2023. (*Id.* at PageID# 3–4.)

On March 22, 2024, Defendants filed a Motion to Dismiss Hall's claims against them. (Doc. No. 11.) Hall did not respond to Defendants' Motion. Accordingly, Defendants' Motion is ripe for a decision.

## II.    Standard of Review

Defendants move to dismiss all of Hall's claims as asserted against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Pursuant to Rule 12(b)(6), the Court accepts Hall's factual allegations as true and construes the Complaint in the light most favorable to Hall. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts

9

to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555–56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 679.  Thus, "Rule 8(a)(2) of the Federal Rules of Civil Procedure 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *Ctr. for Bio-Ethical Reform Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 129 S. Ct. at 1949).

## III.    Analysis

Defendants move to dismiss Hall's Section 1983 and state law claims[5] pursuant to Rule 12(b)(6).  (Doc. No. 11 at PageID# 70.)  The Court will address Hall's Section 1983 and state law claims, in turn, below.

### A.    Section 1983 Claims

In his Complaint, Hall brings Section 1983 claims against Sheriff Greiner and Warden Henry but does not expressly indicate whether he is suing them in their official or individual capacities.  For the following reasons, the Court concludes that Hall has failed to plead a plausible Section 1983 claim against Defendants, whether Hall is suing them in either their official or individual capacities.

#### 1.    Official Capacities

Hall alleges that the Jail's operations "fall[] upon the sheriff," i.e., Sheriff Greiner, and he alleges that Warden Henry moved Hall to a different pod only after his assault had occurred.  (Doc. No. 1 at PageID# 3–4.)  Defendants do not construe these allegations as claims against them in their official capacities, and therefore do present any arguments that they are not liable to Hall for any alleged official capacity claims.  (Doc. No. 11 at PageID# 73, *id.* n.2.)  However, construing Hall's Complaint in a light most favorable to Hall as it must, the Court construes Hall's allegations as asserting claims against Sheriff Greiner[6] and Warden Henry in their official capacities.  *See* O.R.C. § 341.01 ("The sheriff shall have charge of the county jail and all persons confined therein.").

---

[5] Hall's Complaint fails to satisfy the requirements of Rule 10(b), which provides that pleadings must have separate "counts" for each claim.  Fed. R. Civ. P. 10(b).

[6] Defendants contend that Sheriff Greiner was not the Cuyahoga County Sheriff for "substantial portions of the time period covered by [Hall's] Complaint," and instead was the interim Sheriff for some of that period.  (Doc. No. 11 at PageID# 72 n.1.)  As a result, Defendants argue that Sheriff Greiner is not a proper party to this suit with regard to Hall's allegations that occurred outside Sheriff Greiner's time as Sheriff.  (*Id.*)  Because, as discussed below, the Court dismisses

"In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) (citation omitted).  Therefore, any Section 1983 official capacity claims against Defendants would be claims against Cuyahoga County under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006); *see Fluker v. Cuyahoga County*, 2019 WL 3718619, at *3 (N.D. Ohio Aug. 7, 2019) ("To the extent these two claims are pleaded against the County, as well as [individual defendants] in their official capacities, they are both *Monell* claims.").  However, Hall's Complaint is devoid of any allegations that the allegedly unconstitutional Jail conditions or treatment of the inmates in the Jail are the result of a custom or policy of Cuyahoga County, or that Cuyahoga County tolerated or acquiesced to any federal rights violations, as is required by *Monell*. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  Moreover, Hall's general claim of "inadequate staffing" is insufficient to allege a custom or policy.  (*See* Doc. No. 1 at PageID# 7–8; Doc. No. 11 at PageID# 72.) *See Hicks v. Sheldon*, 2019 WL 3759384, at *3 (W.D. Mich. Aug. 9, 2019) (dismissing claim against defendant where plaintiff failed to allege facts "suggesting that [defendant] has a custom or policy of providing inadequate medical staff at prison facilities"); *Brown v. Erie County*, 2021 WL 2228341, at *7 (W.D. Pa. May 18, 2021) (mere "broad" allegation that defendant had "policies or customs allowing inadequate medical staffing" insufficient).

---

all of Hall's claims for, in relevant part, Hall's failure to allege any involvement by Sheriff Greiner (or any other Sheriff), the Court need not address whether Sheriff Greiner is a proper party.

Therefore, Hall has not sufficiently pleaded a *Monell* claim.  Accordingly, the Court dismisses Hall's Section 1983 claims to the extent that they are brought against Defendants in their official capacities.[7]

### 2.    Individual Capacities

The Court next considers whether Hall has stated a claim against Defendants in their individual capacities.  As mentioned above, Hall claims that Sheriff Greiner and Warden Henry bear liability because of their involvement with the Jail's operations and conditions as alleged by him. (Doc. No. 1 at PageID# 3–4.).  For the following reasons, the Court concludes that Hall's Complaint fails to plausibly allege Section 1983 individual capacity claims against Sheriff Greiner and Warden Henry.

#### i.    Personal Involvement and Supervisor Liability

Defendants first contend that Hall fails to allege that Sheriff Greiner or Warden Henry were personally involved in any conduct that violated Hall's constitutional rights.  (Doc. No. 11 at PageID# 71–73.)  The Court agrees.

To state an individual-capacity claim against a government official, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights."  *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002); *see also Fluker v. Cuyahoga County.*, 2019 WL 3718619, at *6 (N.D. Ohio Aug. 7, 2019).  Further, the complaint must allege how each individual defendant caused the plaintiff's alleged constitutional harm.  *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government

---

[7] As discussed below, Hall has failed to allege that Defendants violated his constitutional rights.  Accordingly, any official-capacity *Monell* claim would fail for this reason as well.  *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (requiring an "underlying constitutional violation" for *Monell* liability).

13

officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.").

In this case, Hall fails to explain how Defendants were personally involved in his alleged deprivation of rights.  As to Sheriff Greiner, Hall alleges that "the Jail could [have] prevented" Inmate Myers' overdose on July 17, 2023, and that his rights were violated by a multitude of the Jail's conditions and correctional officers' conduct, including poor food preparation, lack of recreation, disrespect, and slander.  (*See* Doc. No. 1.)  But Hall does not allege that Sheriff Greiner personally was responsible or otherwise took part in the implementation of these conditions or the correctional officers' actions.  Therefore, the Court cannot reasonably attribute Hall's alleged violations to Sheriff Greiner.  *See Wolfe v. Ohio Dep't of Corr. & Rehab.*, 2022 WL 1591304, at *5 (N.D. Ohio May 18, 2022).

As to Warden Henry, Hall's Complaint alleges that, after Hall's assault in Pod 8D, she moved him to another pod.  (Doc. No. 1 at PageID# 3–4.)  If anything, this allegation suggests that, once Warden Henry found out about the physical threat to Hall, she then took action to remedy the threat.  Hall does allege that "the warden is the one who signs off on [whether] I am moved to a pod where I am protected from threats to my physical[] safety."  (*Id.* at PageID# 3.)  Further, Hall alleges that "Cuyahoga County knew the nature of my criminal case and . . . the day of my arrest and did not take the proper necessary steps to protect my physical safety until after this physical assault took place." (*Id.* at PageID# 4–5.)  But these allegations alone, even when read in the light most favorable to Hall, do not suggest that Warden Henry herself was involved in placing Hall in his Pod 8D or failing to move him *before* the assault.  Accordingly, Hall does not sufficiently allege that Warden Henry was personally involved in any challenged conduct.

14

Defendants next maintain that, even if Hall's allegations are construed as asserting a claim for supervisory liability, these claims still fail because Hall's allegation that Defendants control Jail operations does not mean that either Sheriff Greiner or Warden Henry themselves engaged in unconstitutional conduct.[8] (*Id.* at PageID# 73–74.)  The Court agrees.

It is well-established that personal liability under Section 1983 cannot be imposed on supervisors solely on the basis of *respondeat superior*, "or the right to control employees." *See Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 676); *see also Winkler v. Madison County*, 893 F.3d 877, 898 (6th Cir. 2018) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).  Because "[s]upervisors are often one step or more removed from the actual conduct of their subordinates . . . the law requires more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct." *Peatross*, 818 F.3d at 241.  In other words, a supervisor will not be liable "simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Id.* (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).  Rather, "[a]ctive unconstitutional behavior," and not the "mere failure to act," is required. *Id.*; *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) (citation omitted).

"'[A]ctive' behavior does not mean 'active' in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of the constitutional violation." *Peatross*, 188 F.3d at 242.  Instead, a plaintiff must allege that "a

---

[8] Defendants also argue that Hall does not identify any individuals who engaged in any unconstitutional conduct.  (Doc. No. 11 at PageID# 73–74.)  In his Complaint, Hall does identify a correctional officer, Officer Williams, who Hall alleges "disrespected," "threatened," "insulted," "slandered," and "provoked" him.  (Doc. No. 1 at PageID# 20.)  However, as discussed below, Officer Williams' conduct, as alleged, does not amount to a constitutional violation.

supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (citation omitted); *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that supervisor may be actively involved in unconstitutional conduct of a subordinate individual if the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it").

In this case, Hall does not allege any facts that would indicate that either Sheriff Greiner or Warden Henry encouraged, authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct. Hall's Complaint only indicates that Sheriff Greiner and Warden Henry are responsible for the Jail's conditions and Hall's trauma from Inmate Myers' overdose and his physical assault, respectively, simply because they are in positions of influence over the Jail. (Doc. No. 1 at PageID# 3–4.) However, the mere allegation that Defendants control certain aspects of the Jail is insufficient to demonstrate active involvement in any constitutional violations Hall may have experienced. *Heyerman*, 680 F.3d at 647. Therefore, Hall fails to allege that Sheriff Greiner was actively involved in establishing the Jail's conditions or that Warden Henry was actively involved in the events leading to Hall's assault. *See Kuhlman v. City of Cleveland*, 2023 WL 2652585, at *20 (N.D. Ohio Mar. 23, 2023). While Hall "need not set down in detail" all of the particularities of his claims against Defendants, Hall must at least allege some facts related to his individual capacity supervisory liability claims against them. *Moderwell v. Cuyahoga County, Ohio*, 997 F.3d 653, 665 (6th Cir. 2021) (citation omitted). Hall has not done so here.

In sum, Hall's Complaint contains no allegations that would suggest that Defendants undertook or approved any action leading to or concerning Hall's alleged constitutional violations.

Accordingly, Hall's Complaint fails to state a plausible claim of relief under Section 1983 against Sheriff Greiner and Warden Henry in their individual capacities.

### ii.    Standing

Defendants also argue that even if Hall's allegations against Sheriff Greiner and Warden Henry do sufficiently implicate Defendants, Hall does not have standing to pursue claims on behalf of other inmates.  (Doc. No. 11 at PageID# 76.)  The Court agrees.

A *pro se* inmate can proceed in federal court only on his own claim.  *See* 28 U.S.C. § 1654; *Cavanaugh v. Cardinal Local Sch. Dist.*, 409 F.3d 753, 755 (6th Cir. 2006).  *Pro se* litigants cannot present the claims of other inmates in a representative capacity.  *See Leach v. DeWine*, 2023 WL 2585484, at *2 (N.D. Ohio Mar. 21, 2023); *Phillips v. Shelton*, 2019 WL 429679, at *4 n.3 (M.D. Tenn. Feb. 4, 2019).  Although Defendants do not mention it, the Court notes that Hall indicated on the Civil Cover Sheet attached to his Complaint that he brings this suit as a class action under Federal Rule 23.  (Doc. No. 1-1 at PageID# 27.)  But Hall, as an inmate proceeding *pro se*, cannot fairly represent any class and cannot represent the interests of any other inmate.  *See Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001) ("[*P*]*ro se* prisoners are not able to represent fairly the class."); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (finding that *pro se* statute "does not permit plaintiffs to appear *pro se* where interests other than their own are at stake"); *Martin v. Zariwala*, 2018 WL 2725434, at *3 (S.D. Ohio June 6, 2018), *report and recommendation adopted*, 2018 WL 4804663 (S.D. Ohio Oct. 4, 2018) (collecting cases).  Accordingly, because Hall can only bring his Section 1983 claims on his own behalf,  the Court will only consider Hall's allegations as they relate to him.

### iii.    Section 1983 Constitutional Violations

Defendants contend that Hall's allegations concerning Warden Henry placing Hall in his initial pod constitute a failure to protect claim, which Hall's Complaint fails to plausibly state.  (Doc. No. 11 at PageID# 70, 74–76.)  Further, Defendants argue that Hall's claims of disrespect and issues with food preparation do not establish constitutional violations.  (Doc. No. 11 at PageID# 76–78.) Defendants do not address any of Hall's other claimed violations.

To state a claim under Section 1983, Hall must allege that: "(1) he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law." *Hardy v. Cmty. Mental Health*, 2018 WL 4846570, at *3 (6th Cir. July 10, 2018) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)).

For the following reasons, the Court concludes that, even if Hall's Complaint sufficiently allege that Defendants were personally involved in or could be liable as supervisors for the challenged conduct, he nevertheless fails to state a plausible Section 1983 claim because he does not sufficiently allege that any of his federal rights were violated.

As an initial matter, the Court will only consider Hall's claimed constitutional violations as they relate to violations against him.  Hall's claimed constitutional violations as to him personally fall into three general categories: deliberate indifference, conditions of confinement, and various miscellaneous claims.

### a.  Deliberate Indifference

The Court construes Hall's allegations that Warden Henry failed to protect him from harm, and that the Jail's conditions prevented him from receiving adequate medical care, as deliberate

18

indifference claims.  *See Rhodes v. Michigan*, 10 F.4th 665, 673 (6th Cir. 2021).  The Court will address each, in turn, below.

First, Hall's allegation that Warden Henry was involved in his pod placement, which as Defendants note, could be construed as a failure to protect claim.  *See Farmer v. Brennan*, 511 U.S. 825, 830 (1994).  (Doc. No. 11 at PageID# 74–76.)  Hall's Complaint alleges that after he was physically assaulted, Warden Henry moved Hall to another pod.  (Doc. No. 1 at PageID# 3–4.)  Hall further alleges that Cuyahoga County, and by implication Warden Henry,  "knew the nature of [his] criminal case" but failed to "take the proper necessary steps to protect [his] physical safety until after this physical assault took place."  (*Id.* at PageID# 4–5.)

Defendants contend that Hall fails to allege facts demonstrating that the Jail's conditions "put him at substantial risk of suffering serious harm" or that Defendants were "aware of a threat to his safety that warranted removal from his housing unit prior to [his] assault."  (Doc. No. 11 at PageID# 75 (internal quotation marks omitted).)  Defendants argue that "[w]ithout knowledge of a particular risk to his safety, [Warden Henry] had no special additional obligation to prevent the assault."  (*Id.* at PageID# 76.)

For the following reasons, the Court concludes that Hall's Complaint does not adequately state a plausible failure-to-protect claim against Warden Henry.  The Fourteenth Amendment protects pretrial detainees such as Hall from being "punished prior to an adjudication of guilt."  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018).  When a pretrial detainee, as opposed to a convicted prisoner, asserts a deliberate indifference claim against a jail official, the analysis is made under the Fourteenth Amendment's Due Process Clause instead of the more rigorous Eighth Amendment.  *Davis v. Chorak*, 2023 WL 2487339, at *2 (6th

19

Cir. Mar. 14, 2023); *Lawler v. Hardeman County*, 93 F.4th 919, 926 (6th Cir. 2024) ("The Supreme Court has long held that the Due Process Clause offers protections to pretrial detainees that at least match those afforded convicted prisoners under the Eighth Amendment.") (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998)); *Santos v. Lane*, 2022 WL 1462964, at *3 (M.D. Tenn. May 9, 2022).  Under the Eighth Amendment, a detainee must allege facts meeting both an objective and a subjective element.  *Westmoreland v. Butler County*, 29 F.4th 721, 728 (6th Cir. 2022).  Under the Fourteenth Amendment, however, a detainee "need only make 'an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly.'"  *Davis*, 2023 WL 2487339, at *2 (quoting *Westmoreland*, 29 F.4th at 729).

In order to make this showing in the failure-to-protect context, "the detainee must plausibly allege that: (1) the [defendant] 'made an intentional decision with respect to the conditions under which the plaintiff was confined;' (2) '[t]hose conditions put the plaintiff at substantial risk of suffering serious harm;' (3) the [defendant] failed to 'take reasonable available measures to abate that risk;' and (4) by failing to take such measures, the [defendant] 'caused the plaintiff's injuries.'"  *Id.* (quoting *Westmoreland*, 29 F.4th at 729) (alterations in original).  A detainee must allege more than negligence to state a Fourteenth Amendment failure-to-protect claim.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) (recounting that negligence is "categorically beneath the threshold of constitutional due process) (citing *Lewis*, 523 U.S. at 849).

In this case, Hall's Complaint alleges no facts that satisfy the first element.  For this reason alone, Hall's failure to protect claim should be dismissed.  Nevertheless, Hall's allegations that the Jail, or by extension Warden Henry was aware of "his criminal case" but failed to move him to a pod where he would be safe prior to his assault could be construed as addressing some of the remaining

elements. (Doc. No. 1 at PageID# 3–4.) But even if the Court makes this construction, Hall's claim does not satisfy the failure to protect test, as he does not indicate what the "nature" of his criminal case was or allege any facts that would warrant the inference that the Jail, or Warden Henry specifically, should have been aware of the risk to his safety that his criminal charges posed. *See Westmoreland*, 29 F.4th at 730 (holding that plaintiff must allege that defendant officer did not take reasonable available measures even though "reasonable officer in the circumstances would have appreciated the high degree of risk"); *see also Nelson v. Sullivan County Jail*, 2022 WL 1482285, at *3 (E.D. Tenn. May 10, 2022) (failure to protect claim sufficiently pleaded where plaintiff alleged that defendant officers knew that he and assailant inmate "should not be placed in the same cell due to a prior violent incident between them").

Hall appears to imply that the threat of physical violence alone, which was realized during his assault, means that there was a "substantial risk of suffering serious harm," but he does not explain how his initial placement in Pod 8D created a substantial risk of harm. Hall does not identify the assaulting inmates other than to say that they are three "gang members," and does not provide any other facts that would establish that Hall's presence among them, even if they knew of the "nature of his criminal case," created a substantial risk that these inmates would attack him. *Wilson v. Ibarra*, 2023 WL 3105056, at *4–5 (E.D. Ky. Apr. 26, 2023); *Young v. Phillips*, 2022 WL 4360848, at *3 (E.D. Tenn. Sept. 20, 2022) (no failure to protect claim where plaintiff failed to allege that defendant "knew or should have known . . . that [assailant] had any ill intent toward [plaintiff]"). In other words, Hall fails to identify the "condition" that Warden Henry should have avoided or allege that the three "gang members" who attacked him were more likely to attack him because of the "nature" of his criminal case. *See Davis*, 2023 WL 2487339, at *3 (holding that attack "without warning" indicates

21

lack of substantial risk).  Further, Hall's contentions that Defendants acted "negligently," with "negligent recklessness," and/or "negligent indifference or disregard" are unsupported legal conclusions and cannot support his failure-to-protect claim.  *See Wilson*, 2023 WL 3105056, at *5.[9]  Accordingly, Hall fails to allege a claim against Warden Henry under a failure-to-protect theory.

The Court now turns Hall's allegations that the Jail's inadequate staffing led him to not receive proper medical care and/or medical attention and that he "has to watch" other inmates having seizures and dying from drug overdoses because the Jail's staff does not adequately observe the inmates.  (Doc. No. 1 at PageID# 8, 15.)  The Court construes these allegations as a deliberate indifference claim, but one that Defendants do not specifically address in their Motion.

"Both pretrial detainees, like [Hall], and convicted prisoners have a constitutional right to be free from deliberate indifference to their serious medical needs."  *Howell v. NaphCare, Inc.*, 67 F.4th 302, 310 (6th Cir. 2023).  Under the Fourteenth Amendment, a pretrial detainee bringing a deliberate indifference to a serious medical need claim "must [allege] (1) that he had an objectively serious medical need and (2) that each defendant 'acted deliberately [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Howell*, 67 F.4th at 310 (quoting *Brawner v. Scott County*, 14 F.4th 585, 596 (6th Cir. 2021), cert. denied *sub nom.*, *Scott County v. Brawner*, 143 S. Ct. 84 (2022)).

---

[9]Although neither party references it, according to the Cuyahoga County Court of Common Pleas docket, Hall's trial has not yet occurred.  *See* https://cpdocket.cp.cuyahogacounty.us/CR_CaseInformation_Summary.aspx?q=cfBJv1kOa5qLR-xLs1Ofmg2 (last accessed June 18, 2024) (denoting a trial set for June 24, 2024).  Therefore, Hall is a pretrial detainee, and the Fourteenth Amendment applies.  Even if Hall is not a pretrial detainee, because Hall fails to satisfy the relaxed Fourteenth Amendment test, Hall likewise fails to satisfy the more exacting test under the Eighth Amendment.  *See Davis*, 2023 WL 2487339, at *3 ("Because Davis failed to allege that Deputies Tooker and Scavarda violated the Fourteenth Amendment, he necessarily fails the Eighth Amendment's more demanding test as well.").

In this case, Hall does not allege what his "objectively serious medical need" was that anybody at the Jail, to include Defendants, ignored or failed to address. Although Hall alleges that other inmates suffered seizures or overdosed that in part contributed to him being traumatized, other inmates' serious medical problems or needs have no bearing upon whether Hall had an objectively serious medical need. And while Hall alleges that he was physically assaulted and suffered a concussion, stitches, and a chipped tooth as a result thereof, he does not allege that the Jail failed to address his injuries. (Doc. No. 1 at PageID# 4, 10.) *See Anderson v. Monroe County Corr.*, 2023 WL 3814001, at *2 (S.D. Ohio June 5, 2023) (finding no deliberate indifference where plaintiff, "at best, [alleged only] medical malpractice").

Hall further alleges that the Jail's medical staff did not see him in at least two instances, and attached to his Complaint purported copies of grievance forms he filled out. (Doc. No. 1 at PageID# 23, 25–26.) However, only one of these forms, dated February 2, 2023, refers to an injury, that of an ear infection which Hall claimed caused him pain. (*See id.* at PageID# 26.) According to Hall, he was not seen by the Jail's medical staff for two weeks because the Jail cancelled "7 to 10 times." (*Id.*) Even if his ear infection constituted a serious medical need, Hall himself indicates that the Jail's medical staff eventually did see him. Hall alleges no further facts concerning whether his pain was severe or constituted a serious medical need (not all "pain" is severe or suggests a serious medical need). *See Therrien v. Husband*, 2011 WL 494771, at *3 (D. Conn. Feb. 7, 2011) (collecting cases and finding that "whether an ear infection is a serious medical need [is] fact-specific"); *Hardy v. City of New York*, 732 F. Supp. 2d 112, 120 (E.D.N.Y. 2010) (plaintiff's complaints that ear was in "excruciating pain" and "draining green/yellow," coupled with a nurse's note that plaintiff had a "possible ruptured ear drum," could be found to present a serious medical need); *Golden v. Berge*,

23

20023 WL 23221483, at *6 (W.D. Wis. Sept. 25, 2003) (allegation that plaintiff suffered "severe and continuous pain . . . as a result of an ear infection" sufficient to suggest a serious medical need); *see also Feazell v. Augusta County Jail*, 401 F. Supp. 405, 407 (W.D. Va. 1975) ("ear infection" allegation insufficient).  But even if Hall's ear infection did constitute a serious medical need, Hall's Complaint indicates that the Jail's medical staff eventually saw him after two weeks.  (Doc. No. 1 at PageID# 26.)  A two-week delay in seeing a medical professional for an ear infection does not, on its own, establish a deliberate or reckless failure to address the injury.  *See Cook v. LaRoche*, 2017 WL 4777231, at *6 (S.D. Cal. Oct. 23, 2017) (holding that delay in treating ear infection still requires requisite allegation of deliberate indifference); *see also Santiago v. Ringle*, 734 F.3d 585, 592 (6th Cir. 2013) (citing case finding that "sixteen-day delay in reviewing medical records, a six-day delay in approving a consult request, and a three-month delay in performing surgery did not alone evidence deliberate indifference"); *Stewart v. Allen*, 2016 WL 3080859, at *4 (W.D. Ky. May 31, 2016) (one-month delay did not indicate deliberate indifference where allegations showed that delay "had to do with availability").  Hall does not allege that Defendants' failure to treat his ear infection immediately was deliberate and reckless.  Accordingly, Hall has not sufficiently pleaded a plausible claim against Defendants based on a deliberate indifference to a serious medical need.

### b.  Conditions of Confinement

Next, the Court turns to Hall's conditions of confinement claims.  Hall identifies several general conditions in the Jail which he claims are illustrative of "inhumane living conditions" and inadequate staffing, including: (1) lack of exercise/recreation, (2) early lockdowns and overcrowding, (3) unsanitary and delayed food preparation; (4) unclean showers and cells; and (5) lack of haircuts, toothbrushes, razors, and similar hygiene-related items.  (Doc. No. 1 at PageID# 7, 12–14, 16.)  Hall

does not identify any constitutional right that he believes these actions violate other than to assert that some of them constitute "cruel and unusual punishment."  (*Id.* at PageID# 7, 14.)  For the reasons mentioned above, the Court liberally construes Hall's conditions of confinement claims as arising under the Fourteenth Amendment's Due Process Clause.  *See Thomas v. Traficanti*, 2024 WL 1909130, at *5 (N.D. Ohio May 1, 2024).  For purposes of this opinion, the Court will address Hall's conditions of confinement claims in two groups.  First, the Court will consider the Jail's conditions related to recreation and lockdowns.  Second, the Court will discuss the Jail's conditions concerning food preparation, cleanliness, and hygiene.

To state a Fourteenth Amendment claim as a pretrial detainee for conditions of confinement, Hall must allege that he was held under conditions which posed an objectively and "sufficiently serious" threat to his health and safety, and that each Defendant acted deliberately and recklessly in the face of an "unjustifiably high risk of harm."  *Brawner v. Scott County*, 14 F.4th 585, 596 (6th Cir. 2021) (citation omitted); *Helphenstine v. Lewis County*, 60 F.4th 305, 317 (6th Cir. 2023).  As to the objective element, it is well-established that "the Constitution does not mandate comfortable [jails]."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Therefore, only allegations of "extreme deprivations" that deny an inmate "the minimal civilized measure of life's necessities" are sufficient to state a claim.  *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citations omitted).  With these principles in mind, the Court turns to Hall's individual conditions of confinement claims.

Hall alleges that inmates do not have access to outside air or exercise mats and cannot "jog in a large area," and that nighttime lockdown occurs sometimes an hour early.  (Doc. No. 1 at PageID# 15–16.)  These allegations do not establish a constitutional violation.  There is no controlling precedent requiring a minimum amount of or space for outdoor recreation for pretrial detainees, or

the provision of exercise mats. *Thomas*, 2024 WL 1909130, at *5. It is true that the Constitution may be violated when there is "a total or near-total deprivation of exercise or recreational opportunity, without penological justification." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). However, Hall does not allege that he was denied the ability to exercise in his cell or in any other place in the Jail. Rather, Hall only alleges that he was prevented from jogging in a large area or exercising outside. This does not rise to the level of a "total or near-total deprivation of exercise." *See Rodgers v. Jabe*, 43 F.3d 1083, 1086, 1088 (6th Cir. 1995) (citation omitted); *see also Sanchez v. County of Mahoning*, 2024 WL 1347353, at *3 (N.D. Ohio Mar. 29, 2024).

Similarly, lockdowns alone "do not impose a significant hardship, nor are they atypical discipline" for inmates. *Thomas*, 2024 WL 1909130, at *6 (citation omitted). Likewise, overcrowding does not rise to the level of a constitutional violation. *Id.*; *see also Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) ("[O]vercrowding is not, in itself, a constitutional violation."). Hall does not allege any facts indicating that the early lockdowns or overcrowding imposed any unconstitutional hardship or resulted in any injury or deprivation.

The Court next considers Hall's allegations that he is excessively solitarily confined, which results in him not taking showers, getting a haircut, or shaving; does not receive razors, toothbrushes, or other hygiene-related items; and does not receive proper cleaning supplies to clean his cell, wash his state uniform, use a clean shower and mopheads or receive adequate sunlight and/or fresh air in his cell. (Doc. No. 1 at PageID# 13, 15.) Hall also alleges that his drinking sink has mold on the faucet, he has to pay for an indigent pack although he is indigent, smells "human feces and piss" from the broken toilets in his pod, and his cell is sometimes flooded due to clogged toilets. (*Id.* at PageID# 13, 17.) Hall further alleges that the Jail forces him to consume cold food in small portion sizes,

26

where the food is "all thr[ow]n together," soggy, sometimes has hair in it, is "nutritionally inadequate," in a number of instances was served late, and is served in a plastic bag and not cooked in a kitchen.  (*Id.* at PageID# 13–14, 19–24.)

Of these conditions, in their Motion, Defendants only address Hall's allegations of delayed food service and cold food, arguing that neither rises to the level of a constitutional violation.  (Doc. No. 11 at PageID# 78.)

The Court concludes that Hall's conditions do not amount to a constitutional violation.  Jail conditions rise to the level of a constitutional violation only when they involve the "wanton and unnecessary infliction of pain," or concern "deprivations of essential food, medical care, or sanitation" or other conditions intolerable for confinement.  *Rhodes*, 452 U.S. at 347–48.  However, the Constitution does not mandate that a pretrial detainee be free from discomfort or inconvenience, as detainees "cannot 'expect the amenities, conveniences and services of a good hotel.'"  *Harris v. Fleming*, 839 F.2d 1232, 1235 (6th Cir. 1988).  Indeed, the Constitution does not require that jail food be "tasty or widely varied," so long as such a diet "satisfies an inmate's nutritional requirements."  *Faiola v. County of Mahoning*, 2024 WL 1909126, at *3 (N.D. Ohio May 1, 2024).

The Court recognizes that the Jail's conditions, as alleged, may cause discomfort.  *Lindsey v. County of Mahoning*, 2024 WL 1347331, at *4 (N.D. Ohio Mar. 28, 2024) (holding that broken toilets, cold food, and unclean showers were "unpleasant" and "present[ed] discomfort" but were not alleged to "present serious threats" to plaintiff's health and safety).  But Hall does not allege any facts supporting the conclusion that these conditions make his confinement intolerable or that they pose a serious risk to his health.  *See Brooks v. Blair*, 2022 WL 4279713, at *8 (W.D. Tenn. Sept. 15, 2022) (finding no deprivation where inmate did not allege illness from food or allege the origin of hair

follicles found in foot); *Bonds v. Lindamood*, 2018 WL 817229, at *4 (M.D. Tenn. Jan. 16, 2018), *report and recommendation adopted*, 2018 WL 813162 (M.D. Tenn. Feb. 9, 2018) (noting that "dirty and foul smelling cells, unclean toilets, brief delays in obtaining cleaning supplies and personal property, a lack of shoes for a few days, an absence of showers and outside recreation for no more than a week while in segregated confinement, and constant hallway lighting" do not rise to unconstitutional deprivation); *Ishaaq v. Compton*, 900 F. Supp. 935, 943 (W.D. Tenn. 1995) (finding allegation that showers were "very dirty" and not properly cleaned insufficient to allege serious risk); *Thomas*, 2024 WL 1909130, at *6 (observing that moldy showers and temporarily broken toilets do not constitute serious threat); *but see Ayers v. Ohio*, 2019 WL 4832957, at *7 (N.D. Ohio Oct. 1, 2019) (denying motion to dismiss in Eighth Amendment context where plaintiff alleged food housed in the same cart as "dead rodents, mouse droppings, maggots, and insects" and which exuded a "revolting smell").  And although Hall questions whether soggy food that "comes from a plastic bag" and served in small portions can be nutritionally sufficient, Hall does not allege any facts indicating that the food does not fulfill his nutritional needs. *Sims v. Mich. Dep't of Corr.*, 23 F. App'x 214, 216 (6th Cir. 2001); *Faiola*, 2024 WL 1909126, at *3.

Lastly, the failure of the Jail to provide a razor, toothbrush, or other hygienic item or haircuts does not present a constitutional violation. *Tolson v. Washburn*, 2019 WL 1572931, at *6 (M.D. Tenn. Apr. 10, 2019); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("[The] deprivation of . . . personal hygiene items for a brief span of time . . . , i.e., only six days is not actionable conduct.") (citation and internal quotation marks omitted).

Hall has not alleged sufficient facts showing that any conditions posed a "serious threat" to his health.  Hall has further failed to allege any facts indicating that either Sheriff Greiner or Warden

Henry acted deliberately or recklessly in the face of an unjustifiably high risk of harm. Accordingly, Hall has failed to allege a Section 1983 claim for unconstitutional conditions of confinement.

### c. Other Claims

Hall further raises other miscellaneous claims as potential violations, including slander/disrespect, instances in which he missed video calls with his counsel, mail delays, and the Jail's failure to abide by its handbook. (Doc. No. 1 at PageID# 7–8, 10, 12.) In their Motion, Defendants only address Hall's allegations of slander and disrespect. The Court will address each, in turn, below.

In his Complaint, Hall alleges that he has been slandered and disrespected by an unnamed correctional officer, who had told the Jail inmates, "y['']all go in your houses, and in another instance, where a correctional officer ignored Hall's complaint that he had hair in his food. (Doc. No. 1 at PageID# 17, 23.) In their Motion to Dismiss, Defendants contend that allegations of verbal abuse do not state a Section 1983 claim. (Doc. No. 11 at PageID# 78.)

The Court agrees with Defendants. Inmates have "no constitutionally protected right to be free from verbal abuse," including "idle threats." *Scott v. Kilchermann*, 230 F.3d 1359, 2000 WL 1434456, at *2 (6th Cir. 2000) (table); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012). Therefore, Hall cannot establish a constitutional violation based on isolated instances of verbal harassment, threats, disrespect. *See Thomas v. Novicky*, 2014 WL 6896576, at *3 (N.D. Ohio Dec. 8, 2014) (collecting cases); *Glover v. Boardman*, 2018 WL 6726875, at *4–5 (N.D. Ohio Dec. 21, 2018).

Hall further alleges that he did not get to attend two separate video visits with his lawyer because the Jail is "short of staff." (*Id.* at PageID# 18.) This allegation does not present a

29

constitutional violation.  While jails must permit pretrial detainees to communicate with their attorneys, inmates do not have a constitutional right to speak with them by the "most sophisticated or convenient mode" available.  *Lowery v. Westchester County*, 2017 WL 564674, at *4 (S.D.N.Y. Feb. 10, 2017).  Hall does not allege that he was unable to speak with his counsel by other means, such as by telephone or in-person visits.  *Id.* at *3–4.  Accordingly, Hall has failed to state a plausible claim against Defendants for denying him the ability to speak with his counsel by video in the two instances alleged.

Hall next alleges that the Jail's inadequate staffing prevents him from timely receiving mail, and that in a couple of instances, he received mail late.  (Doc. No. 1 at PageID# 20–21.)  These two alleged instances of late mail delivery do not rise to the level of a constitutional violation.  *See Martinez v. Gore*, 2021 WL 2269987, at *4 (W.D. Ky. June 3, 2021) (collecting cases in First Amendment context); *Phillips v. Woods*, 2024 U.S. App. LEXIS 8229, at *3 (6th Cir. Apr. 4, 2024).  Hall does not allege that any Jail staff deliberately delayed his mail or that he was injured by the two delays he experienced.

Hall also alleges that he did not receive his commissary in three separate instances.  (Doc. No. 1 at PageID# 18–19.)  The jail's failure to provide commissary in three isolated instances does not rise to the level of a sufficiently serious constitutional violation, as a pretrial detainee such as Hall does not have a constitutional right to access the commissary.  *See Shocklee v. Rose*, 2023 WL 2386897, at *5 (W.D. Ark. Jan. 12, 2023), *report and recommendation adopted*, 2023 WL 2386761 (W.D. Ark. Mar. 3, 2023).

Hall also alleges that the Jail failed to comply with a multitude of other provisions listed in a Jail handbook.  (Doc. No. 1 at PageID# 15–16.)  This allegation fails to state a Section 1983 claim.

30

A jail's failure to follow institutional procedures or policies does not, on its own, give rise to a constitutional claim.  *Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993) (no violation "so long as the minimum constitutional requirements have been met"); *Rush v. Jenkins*, 2024 WL 2064047, at *3 (E.D. Tenn. May 8, 2024) (citing *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995)); *Carroll v. Osborne*, 2023 WL 3191561, at *2 (S.D. Ohio May 2, 2023) (adopting magistrate judge's conclusion that Section 1983 claim based on failure to follow prison policy should be dismissed); *Jordan v. Summit County*, 2018 WL 4335598, at *8 (N.D. Ohio Sept. 11, 2018).

In sum, Hall's Complaint fails to allege that Defendants or any other actor at the Jail violated his federal rights.  Accordingly, the Court dismisses Hall's Section 1983 individual capacity claims to the extent that the challenged conduct therein can be attributed to Defendants.

### B.    State Law Claims

Although Hall's Complaint does not expressly allege any other claims than those raised under Section 1983, Defendants assert that Hall's allegations of negligence, negligent infliction of emotional distress, and recklessness may be construed as state law claims.[10]  (Doc. No. 11 at PageID# 78.)  As a result, Defendants argue that they are "immune from liability on these state-law claims under [Ohio's] political subdivision immunity statute."  (*Id.*)[11]  The Court agrees.

---

[10] In the Civil Cover Sheet attached to his Complaint, Hall indicated that his Complaint asserts state law clams for assault, libel and slander, and product liability.  (Doc. No. 1-1 at PageID# 27.)  However, as mentioned above, Hall's Complaint does not allege any facts indicating that Defendants are personally responsible for any of his personal injuries, and accordingly, Hall's Complaint fails to state-law claims for these claims.

[11] Because the Court dismisses Hall's Section 1983 claims, the only remaining claims against Defendants, if any, are Hall's state law claims for negligence, "negligent recklessness," neglect of duty, and negligent indifference or disregard.  (Doc. No. 1 at PageID# 4.)  The Court has supplemental jurisdiction over any such state law claims.  28 U.S.C. § 1367(a).  And it "has discretion as to whether to exercise supplemental jurisdiction after dismissing the claims over which it has original jurisdiction."  *Miller v. Collins*, 2023 WL 7303305, at *4 (6th Cir. Nov. 6, 2023) (citing 28 U.S.C. § 1367(c)(3)).  "When deciding whether to exercise supplemental jurisdiction, courts consider and weigh 'the values of judicial economy, convenience, fairness, and comity.'"  *Id.* (quoting *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010)).  As

Section 2744.02 of the Ohio Revised Code grants immunity to political subdivisions "in a civil action for injury[] . . . allegedly caused by any act or omission of . . . an employee of [a] political subdivision in connection with a governmental or proprietary function."  O.R.C. § 2744.02(A)(1).  This immunity extends to employees of a political subdivision, insulating such employees from liability unless: (1) "The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;" (2) "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) "[c]ivil liability is expressly imposed upon the employee" by statute.  *Id.* § 2744.03(A)(6). *See also Kiekisz v. Cuyahoga Cnty. Bd. of Comm'rs*, 2021 WL 5193985, at *9 (N.D. Ohio Nov. 9, 2021).  Defendants, as employees of Cuyahoga County, are entitled to immunity unless one of the three exceptions applies.  *Kiekisz*, 2021 WL 5193985, at *9.

In this case, Hall's Complaint expressly ties Sheriff Greiner and Warden Henry's liability to their responsibilities as employees of Cuyahoga County, which eliminates the first exception.  (Doc. No. 1 at PageID# 3–5.) *See also Coley v. Lucas County*, 799 F.3d 530, 542–43 (6th Cir. 2015) ("Federal courts have held that sheriffs . . . are considered employees of the county, which is a political subdivision of the state."); O.R.C. § 2744.01(C)(2)(h) (denoting operation of a jail as a governmental function).  Regarding the second exception,  Hall's Complaint lacks any factual allegations indicating that Sheriff Greiner or Warden Henry acted with malice, in bad faith, or in a wanton or reckless manner, and any allegations of "mere negligence" are insufficient. *Fabrey v. McDonald Vill. Police*

---

discussed below, the Court concludes that Defendants are entitled to political subdivision immunity under Ohio law.  Thus, if the Court were to decline supplemental jurisdiction over Hall's state-law claims and Hall thereafter refiles them in state court, Defendants would presumably re-assert their immunity in state court.  This process would vitiate judicial economy, and therefore, the Court will exercise its supplemental jurisdiction over Hall's state-law claims.

*Dep't*, 639 N.E.2d 31, 35 (Ohio 1994); *Hoffman v. Gallia Cnty. Sheriff's Off.*, 103 N.E.3d 1, 14, 17 (Ohio App. 4th Dist. 2017).  As for the third exception, liability is not expressly imposed upon Defendants by Ohio law in this circumstance, and therefore, it does not apply.  *See Lassen v. Lorain County*, 2014 WL 3511010, at *8 (N.D. Ohio July 14, 2014) ("No section of the Revised Code expressly imposes liability on Sheriff Stammitti, Deputy Crausaz, or Deputy Rodriguez.").  Because none of the exceptions to political subdivision immunity outlined in Section 2744.03(A)(6) apply to Defendants, Sheriff Greiner and Warden Henry are entitled to statutory immunity on Hall's state-law claims.

## IV.    Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion to Dismiss.  (Doc. No. 11.)

**IT IS SO ORDERED.**


                                          *s/Pamela A. Barker*
                                          PAMELA A. BARKER
Date:  June 21, 2024                      U. S. DISTRICT JUDGE